IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| FORCEX INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. _____ |
| ) | JUDGE _____ |
| v. ) | MAGISTRATE JUDGE _____ |
| ) | |
| GRANT KYLE ) | |
| AND BLUGUISE, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, ForceX, Inc. ("ForceX" or "Plaintiff") alleges the following claims against Grant Kyle ("Kyle") and Bluguise, LLC ("Bluguise") (collectively "Defendants"):

### PARTIES, JURISDICTION, AND VENUE

1. ForceX is a Tennessee corporation with its principal place of business at 1001 Progress Drive, Clarksville, Tennessee 37040.

2. Kyle is an individual who is a citizen and resident of Wake County North Carolina. He resides at 1008G Sandlin Place, Raleigh, North Carolina 27606.

3. Bluguise is a North Carolina limited liability company with its principal place of business at 1008G Sandlin Place, Raleigh, North Carolina 27606.

4. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1332, as this is an action for damages in excess of $75,000.00 and equitable relief, involving a controversy among citizens of different states.

5. This Court has personal jurisdiction over Kyle based on one or more of the following non-exhaustive reasons:

a) Kyle was employed by ForceX in Tennessee as its Chief Technology Officer;

b) Kyle visited Tennessee frequently during the course of his employment with ForceX to carry out his duties;

e) Kyle received ForceX's confidential information and trade secrets when he was physically present within the State of Tennessee;

d) Kyle contributed to ForceX's decision-making regarding products that ForceX designed, created and marketed from the State of Tennessee;

e) Kyle converted and misappropriated the confidential information and trade secrets at issue from ForceX's computer servers, databases, files and other storage media, all of which were located within the State of Tennessee;

f) During the course of his employment with ForceX, Kyle reported to and received directives from ForceX employees located within the State of Tennessee;

g) During the course of his employment with ForceX, Kyle supervised and provided directives to subordinate employees of ForceX who were physically present within the State of Tennessee;

h) Kyle committed overt acts and acted in concert in a civil conspiracy to misappropriate the trade secrets and confidential information of, and otherwise harm, a Tennessee corporation (ForceX); and at least one of his co-conspirators (Zink) was located within the State of Tennessee at all material times. *See Manufacturers Consolidation Service, Inc. v. Rodell*, 42 S.W.3d 846 (Tenn. Ct. App. 2000) (recognizing the "civil conspiracy theory of personal jurisdiction").

2

N BHB 927401 v2
2919752-000003 10/02/2012
Case 3:12-cv-01017   Document 1   Filed 10/03/12   Page 2 of 19 PageID #: 2

6. This Court has personal jurisdiction over Bluguise based on one or more of the following non-exhaustive reasons:

    a) Kyle is the sole member/manager of Bluguise, and thus his acts and omissions described herein should be imputed to Bluguise as the alter-ego of Bluguise;

    b) Bluguise committed overt acts and acted in concert in a civil conspiracy to misappropriate the trade secrets and confidential information of, and otherwise harm, a Tennessee corporation (ForceX); and at least one of its co-conspirators (Zink) was located within the State of Tennessee at all material times. *See Manufacturers Consolidation Service, Inc. v. Rodell*, 42 S.W.3d 846 (Tenn. Ct. App. 2000) (recognizing the "civil conspiracy theory of personal jurisdiction").

    c) The confidential information and trade secrets of ForceX that Bluguise misappropriated and uses in its products and marketing efforts originated from ForceX's computer servers, databases, files and other storage media, all of which were located within the State of Tennessee;

7. Venue is proper in this Court pursuant to 28 USC § 1391(b)(2), because Nashville, Tennessee is where a substantial part of the events or omissions giving rise to ForceX's claims occurred.

N BHB 927401 v2
2919752-000003 10/02/2012

Case 3:12-cv-01017    Document 1    Filed 10/03/12    Page 3 of 19 PageID #: 3

# FACTS COMMON TO ALL COUNTS

## Background

### ForceX

8. ForceX develops geospatial products and related engineering services for a wide range of customers, both air and ground, military and non-military. ForceX's applications are portable across a wide variety of devices, including without limitation, laptop computers, hand held devices and mobile phones.

9. A critically important and unique aspect of ForceX's proprietary technology enables ForceX to design and develop real time video displays that feature geo-positioning references embedded within the video, which is a feature that is proprietary and unique to ForceX's products. ForceX refers to this technology as "3D video." "3D video" is a term that ForceX originated to refer to this particular technology; it is not an industry-wide term.

10. ForceX's geospatial products and related engineering services are unique because they operate based on a computer's graphics processing unit ("GPU"), as opposed to typical mapping applications, which are based on a computer's central processing unit ("CPU").

11. Kyle was employed by ForceX as its Chief Technology Officer from approximately June 2006 through May 2008.

12. As its Chief Technology Officer, Kyle was responsible for the research and development of ForceX's products; he managed ForceX's team of software developers; and he was thoroughly familiar with, had access to, and helped develop all of ForceX's technological trade secrets, including without limitation, its software code, its development processes, and its customer requirements.

4

13. While employed by ForceX, Kyle worked primarily on the user interfaces of ForceX's products and helped ForceX's Chief Scientist, Ed Zink ("Zink") in developing ForceX's core software code.

14. Zink and Kyle implemented a system of color coding for ForceX's software developers, which corresponded to their level of access to the ForceX software code. They referred themselves as the "blue guys," in reference the highest level of access to ForceX's core software code. Upon information and belief, the name "Bluguise" refers to Kyle and Zink's access level while they were employed by ForceX.

15. Kyle and Zink were friends when they worked together at ForceX. Kyle's employment with ForceX was terminated in May 2008. Zink resigned on February 12, 2010. Kyle and Zink were in regular contact after Kyle's employment with ForceX ended and before Zink left ForceX. They worked on technology products together during this time period, and Kyle attempted to convince Zink to leave ForceX so that they could begin working together for Technology Fusion.

### Bluguise, LLC and Technology Fusion, LLC

16. On or about June 15, 2009, Kyle formed Bluguise. Bluguise develops geospatial applications that are similar to, if not identical to, ForceX's applications using ForceX's trade secrets. These applications are used for situational awareness, targeting, tracking, and locating, and intelligence, surveillance and reconnaissance.

17. Kelly McDougall ("McDougall") is the sole member of Technology Fusion, a Virginia limited liability company. Technology Fusion markets the geospatial applications that Bluguise develops.

N BHB 927401 v2
2919752-000003 10/02/2012
Case 3:12-cv-01017   Document 1   Filed 10/03/12   Page 5 of 19 PageID #: 5

18. In early 2010, Kyle contacted Kelly McDougall, ForceX's former Vice President of Airborne Systems. McDougall and Kyle discussed how they could work together to develop and market products that are similar, if not identical, to ForceX's products.

19. Kyle and McDougall agreed that Bluguise would develop software products that Technology Fusion would market and sell to military and law enforcement entities. They agreed to split any profits from the sale of Bluguise software by Technology Fusion.

20. They further agreed that Technology Fusion would pay Zink to work with Bluguise to develop its software products. Zink writes software code for Blueguise and develops its products.

21. Prior to the end of Zink, Kyle, and McDougall's employment with ForceX, ForceX did not have any competitors marketing geospatial applications based on a computer's GPU.

22. Technology Fusion and Bluguise have emerged as a competitor to ForceX. Bluguise develops geospatial applications that operate through a computer's GPU and are otherwise very similar if not identical to ForceX's products.

23. Kyle, Zink and McDougall are the only three individuals who have Technology Fusion e-mail addresses, and their locations were referenced as the three "branch locations" of Technology Fusion on its website.

### ForceX's Trade Secrets

24. Kyle and Bluguise have specifically targeted and developed products that are similar to ForceX's products that were in the research and development stage during Kyle's, Zink's, and McDougall's employment with ForceX. These include mobile device applications and "low visibility" applications for covert operations. Kyle was responsible for developing

these products on behalf of ForceX while he was employed by ForceX, and he is now doing so on behalf of his own company, Bluguise. Kyle testified under oath that ForceX would be "sitting pretty" if it had developed the products that he was charged with developing for ForceX, which he has now developed for his own company, Bluguise, using ForceX's trade secrets.

25. Technology Fusion's website, marketing software developed by Bluguise, has contained multiple references to technology that is unique and proprietary to ForceX, including:

- o "3D video" - a specific name that ForceX uses for its technology;
- o "Madden Draw" - a specific term that ForceX uses to describe a unique feature of its products;
- o "Cursor-on-Target" - a specific term that ForceX uses to describe another feature of its products; and
- o "GEO Video" - a specific term that ForceX uses to describe another unique feature of its products.
- o "Blue Force Tracking" - a specific term that ForceX uses to describe another unique feature of its products.
- o "Map Manager" - a specific term that ForceX uses to describe another unique feature of its products.

A copy of Technology Fusion's website, as of May 25, 2011, is attached hereto as *Exhibit A*.

26. Technology Fusion has demonstrated software developed by Bluguise to at least one of ForceX's commercial partners and to ForceX's largest customer. Technology Fusion has marketed Bluguise software as a potential replacement for at least one of ForceX's products. The graphical user interface of the Bluguise product that Technology Fusion has demonstrated is similar to and competitive with a ForceX product that Kyle helped develop while he was still employed by ForceX.

27. These facts and the statements on Technology Fusion's website confirm that Bluguise has, by and through Kyle and Zink, and with the marketing assistance of McDougall,

7

misappropriated ForceX's trade secrets and confidential information in order to unfairly compete with ForceX.

28. In order to design and develop the products Bluguise develops, Kyle would need ForceX's confidential information and trade secrets and technical assistance from someone with Zink's expertise.

29. Zink and Kyle are the source of Bluguise's technical knowledge and they have disclosed ForceX's trade secrets and confidential information to Bluguise.

30. The Chancery Court of Davidson County, Tennessee has already found that the Bluguise products marketed by Technology Fusion are "similar to or very similar to" ForceX's products. That Court has enjoined McDougall, Zink, and Technology Fusion from marketing, selling, or developing products similar to certain ForceX products for use by the military and law enforcement. Bluguise and Kyle were not parties to that lawsuit against Zink, McDougall, and Technology Fusion, as the extent of their involvement was unknown to ForceX when it filed that previous suit.

## Trade Secrets and Confidential Information

31. Throughout his employment with ForceX, Kyle had total access to ForceX's trade secrets and confidential information, including without limitation:

    a) The source code of ForceX's proprietary software;

    b) Software development processes, methods and plans;

    c) Development processes, methods and plans for products other than software;

    d) Hardware requirements and specifications for ForceX's products;

    e) Hardware and software systems compatibility integration;

8

f) Information received from the end users of ForceX's products (typically the U.S. military or other government agencies) regarding their current and future needs;

g) Information received from ForceX's commercial partners (typically other government contractors) regarding the design and development of their products and how to match ForceX's technologies to theirs;

h) Research and development initiatives;

i) Good will earned through years of providing high-quality service and products;

j) Business and marketing plans related to new market and product development opportunities;

k) Accumulated technical know-how;

l) Pricing strategies; and

m) Contract procurement and renewal strategies.

32. Kyle and Bluguise have misappropriated ForceX's trade secrets and confidential information and have used them to profit themselves and ForceX's competitor, Technology Fusion.

33. Upon information and belief, Kyle and Bluguise used confidential information and trade secrets that Kyle and/or Zink retained after their employment with ForceX ended, and they have sold or otherwise disclosed them to ForceX's competitor, Technology Fusion.

34. As an employee of ForceX, Kyle and Zink were given access to ForceX's trade secrets and confidential information, including customer information, pricing information, technological data, and company strategies. Kyle and Zink regularly attended meetings where

9

ForceX discussed how best to design its products to meet its customers' needs. As a result, Kyle and Zink learned detailed customer requirements, preferences, and processes that are not available to the public.

35. ForceX's confidential information and trade secrets are highly confidential and only shared with a small number of persons employed by ForceX on a "need to know" basis. ForceX also password protects its computer networks and restricts access to trade secrets and confidential information that it stores electronically through varying levels of network access.

36. Kyle and Bluguise have misappropriated ForceX's trade secrets and confidential information and, upon information and belief, have used them to profit themselves and ForceX's competitor, Technology Fusion. Upon information and belief, Kyle and Zink have maintained possession of ForceX's trade secrets and confidential information after their employment with ForceX ended. Alternatively, Bluguise has improperly obtained ForceX's confidential information from Kyle, McDougall, Zink, or other ForceX employees.

## COUNT ONE: JOINT VENTURE/AGENCY RELATIONSHIP/PARTNERSHIP
(Against Both Defendants)

37. Plaintiff incorporates Paragraphs 1 through 36 above as if each has been fully restated herein.

38. Kyle and Bluguise share a common purpose, design, and scheme with McDougall, Zink, and/or Technology Fusion to engage in all of the acts described in this Complaint.

39. Kyle and Bluguise, on the one hand, and McDougall, Zink, and/or Technology Fusion, on the other hand, are engaged in a joint venture, agency relationship, and/or partnership for the purpose of committing the illegal acts described herein.

10

40. As joint venturers, principals in an agency relationship, and/or partners, Kyle and Bluguise are liable for all of the illegal acts of McDougall, Zink, and Technology Fusion described herein.

## COUNT TWO: TENNESSEE UNIFORM TRADE SECRETS ACT
### (Against Both Defendants)

41. Plaintiff incorporates Paragraphs 1 through 40 above as if each has been fully restated herein.

42. By virtue of their employment with ForceX, Kyle, Zink, and McDougall were provided with and had access to ForceX's trade secrets and confidential information, which were provided to them under circumstances that required them to maintain the secrecy of the information and/or to limit its use. This information included, but was not limited to, ForceX's proprietary software technologies and software engineering processes.

43. Without ForceX's consent, Kyle, Zink, and McDougall have disclosed ForceX's trade secrets and confidential information to Bluguise. Kyle and Bluguise have used ForceX's trade secrets and confidential information to develop and market products for their benefit, to the detriment of ForceX.

44. Bluguise's prototype product that Technology Fusion demonstrated to ForceX's commercial partner was identified by ForceX's largest end-user customer as a potential replacement to ForceX's product. The prototype was similar in its user interface to products that ForceX develops at great expense to ForceX. Kyle and Bluguise do not have the technological resources to design, develop and produce such a product without misappropriating ForceX's trade secrets.

N BHB 927401 v2
2919752-000003 10/02/2012

45. Bluguise acquired ForceX's confidential information and trade secrets from Zink, Kyle, and/or other third parties knowing or having reason to know that Zink, Kyle, and/or the other third parties improperly disclosed such information to it.

46. Through the aforesaid acts, Kyle and Bluguise have violated the Tennessee Uniform Trade Secrets Act, § 47-25-1701, *et seq.* and their violations are willful and malicious.

47. ForceX is entitled to damages in an amount to be determined at trial, attorneys' fees pursuant to Tenn. Code Ann. § 47-25-1705(3), punitive damages and injunctive relief, as further described below.

## COUNT THREE: UNJUST ENRICHMENT
(Against Both Defendants)

48. Plaintiff incorporates Paragraphs 1 through 47 above as if each has been restated herein.

49. Kyle and Bluguise have been compensated by Technology Fusion for disclosing or utilizing ForceX's trade secrets and confidential information to Technology Fusion. As a result, Kyle and Bluguise have been unjustly enriched to ForceX's economic detriment.

50. Defendants have received economic benefits through the use and sale of trade secrets and confidential information that originated from ForceX.

51. It would be unfair for Defendants to retain the economic benefits they have obtained because of these actions, and ForceX is entitled to recover the value of any remuneration that Defendants have received through their unlawful use of ForceX's trade secrets and confidential information.

N BHB 927401 v2
2919752-000003 10/02/2012

## COUNT FOUR: UNFAIR COMPETITION
### (Against Both Defendants)

52. Plaintiff incorporates Paragraphs 1 through 51 above as if each has been restated herein.

53. During their employment, Kyle and Zink's job duties required them to access and obtain an extensive knowledge of ForceX's trade secrets and confidential business information as described above.

54. Defendants engaged in unfair competition to ForceX's economic detriment by acquiring the trade secrets and confidential information that Kyle and Zink obtained during their employment by ForceX to facilitate competition against ForceX.

55. As a direct and proximate result of these actions, ForceX has suffered, and continues to suffer, economic injury for which it is entitled to recover compensatory and punitive damages.

## COUNT FIVE: CIVIL CONSPIRACY
### (Against Both Defendants)

56. Plaintiff incorporates Paragraphs 1 through 52 above as if each has been restated herein.

57. Defendants engaged in a joint common design with McDougall, Zink and/or Technology Fusion to use the trade secrets and confidential information of ForceX for their own benefit.

58. Defendants acted in concert with McDougall, Zink and/or Technology Fusion to unlawfully take the trade secrets and confidential information of ForceX for their own benefit.

59. Defendants acted in concert with McDougall, Zink and/or Technology Fusion to use the trade secrets and confidential information to unfairly compete with ForceX.

13

60. Defendants acted in concert with McDougall, Zink and/or Technology Fusion to unlawfully compete with ForceX.

61. Defendants have engaged in overt acts in furtherance of their conspiracy to unlawfully take the trade secrets and confidential information of ForceX, including but not limited to, developing a competing product using ForceX's confidential information and trade secrets and providing its software to Technology Fusion to market it to ForceX's customers.

62. As a direct and proximate result of these actions and the Defendants' conspiracy, ForceX has suffered, and continues to suffer, economic injury for which it is entitled to recover compensatory and punitive damages.

## COUNT SIX: PROCUREMENT OF BREACH OF CONTRACT
(Against Both Defendants)

63. Plaintiff incorporates Paragraphs 1 through 62 above as if each has been restated herein.

64. Zink and McDougall entered into Employment, Confidential Information, and Invention Assignment Agreements ("Agreements") which prohibited their disclosure of ForceX's confidential information and trade secrets and contained post-employment restrictive covenants prohibiting competition and interference with ForceX's customers.

65. The Agreements between ForceX and Zink and McDougall are valid contracts.

66. Kyle was aware of these contracts between Zink and ForceX and McDougall and ForceX, and he requested that Zink send him a copy of the Agreement for review, as part of his efforts to recruit Zink to work for Bluguise.

67. Kyle and Bluguise intended to induce Zink and McDougall to breach their Agreements by providing ForceX's trade secrets and confidential information to Kyle and Bluguise and by having McDougall market products that compete with ForceX's products.

14

N BHB 927401 v2
2919752-000003 10/02/2012
Case 3:12-cv-01017 Document 1 Filed 10/03/12 Page 14 of 19 PageID #: 14

68. Kyle and Bluguise acted with malice and in willful violation of ForceX's known rights in inducing Zink and McDougall to breach their contracts.

69. Through the aforesaid actions, Zink and McDougall have breached the terms of their Agreements with ForceX.

70. Zink and McDougall's breach of the Agreements was the proximate result of Kyle's and Bluguise's conduct.

71. ForceX is entitled to recover compensatory and punitive damages in an amount to be determined at trial and injunctive relief as described below.

### COUNT SEVEN: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Against Both Defendants)

72. Plaintiff incorporates Paragraphs 1 through 71 above as if each had been fully restated herein.

73. ForceX had existing business relationships with specific identifiable third parties and prospective business relationships with specific identifiable third parties at the time that Bluguise allowed its software to be marketed to ForceX's customers and commercial partners.

74. Defendants had knowledge of ForceX's existing business relationships with these identifiable third parties at the time that Bluguise allowed its software to be marketed to ForceX's customers and commercial partners.

75. Defendants intended to cause the breach and/or termination of ForceX's existing and prospective business relationships with these identifiable third parties.

76. Defendants acted with improper motive and through improper means, including but not limited to improperly taking and using ForceX's trade secrets and confidential information, with the primary purpose of injuring ForceX.

15

77. As a direct and proximate result of these actions, ForceX has suffered, and continues to suffer, economic injury for which it is entitled to recover compensatory damages and punitive damages.

## COUNT EIGHT: INJUNCTIVE RELIEF

78. Plaintiff incorporates Paragraphs 1 through 77 above as if each had been fully restated herein.

79. Injunctive relief is necessary to preserve and protect ForceX's proprietary interest in its technological inventions, trade secrets, and other confidential information, in which it has invested substantial time, money and energy, and which it has taken substantial steps to preserve.

80. Unless this Court enjoins Defendants as requested herein, ForceX will continue to suffer significant and irreparable harm if Defendants are permitted to continue their wrongful conduct described herein, and ForceX has no adequate remedy at law that could compensate it for the damage that Defendants are causing to ForceX's competitive position within the industry.

81. Defendants will not be harmed by injunctive relief that enforces their valid legal obligations to ForceX.

82. Injunctive relief is in the public interest because ForceX is protecting its trade secrets, which the law allows and protects.

83. ForceX is further entitled to injunctive relief pursuant to Tenn. Code § 47-25-1703, as a result of Defendants' misappropriation of its trade secrets.

WHEREFORE, Plaintiff prays that this Court:

(1) Issue preliminary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65 that:

N BHB 927401 v2
2919752-000003 10/02/2012

a. enjoins Defendants from any further disclosure or use of confidential information of ForceX;

b. enjoins Defendants from any further misappropriation of trade secrets of ForceX;

c. enjoins both Defendants from, directly or indirectly, on behalf of themselves or for any other person or entity, from doing business with, marketing to, promoting, advertising, demonstrating, soliciting, or communicating with, any person, entity, end user, or contractor employed by or associated with, by contract or otherwise, the U.S. Department of Defense, U.S. Department of Homeland Security, any state or federal law enforcement agency, or any military, paramilitary, or law enforcement agency, any intelligence agency, or department of any foreign government;

d. enjoins both Defendants from, directly or indirectly, on behalf of themselves or for any other person or entity, from marketing, promoting, advertising, demonstrating, communicating about, developing, working on, or selling any products or services that are the same as or similar to ForceX's products, for a period of three (3) years from entry of injunctive relief; including without limitation, any products that are used or intended to be used on any type of device by military, paramilitary, intelligence, or law enforcement personnel for geospatial; mapping; situational awareness; mission planning; mission execution; post mission analysis;

17

intelligence gathering; surveillance; reconnaissance; targeting; tagging; tracking; and locating;

  e. enjoins both Defendants from, contacting, soliciting, marketing, promoting, advertising, demonstrating, communicating about, developing, working on, or selling any products or services to any individual, entity, contractor, or end user directly or indirectly associated with Big Safari, or any successor to Big Safari, for a period of three (3) years from the entry of this injunction;

(2)   Order Defendants to return to ForceX all property and proprietary or confidential information of ForceX that is in Defendants' possession, custody, or control;

(3)   Order Defendants to disgorge and pay to ForceX any payments that they have received as a result of the wrongful actions described herein;

(4)   Enter judgment in favor of ForceX, and against Defendants, in an amount to sufficiently compensate ForceX for all losses and damages shown by the evidence to have been suffered by ForceX as a result of Defendants' wrongful actions;

(5)   Enter judgment in favor of ForceX, and against Defendants, for treble damages under Tenn. Code Ann. § 47-50-109;

(6)   Enter judgment in favor of ForceX, and against Defendants, for punitive damages in an amount to be determined at trial;

(7)   Award ForceX its costs, reasonable attorneys' fees, and such other relief, in law and equity, as this Court may deem just and proper, including attorneys' fees under Tenn. Code § 47-25-1705(3), and pre- and post-judgment interest.

Respectfully Submitted,

*[signature]*

Kenneth A. Weber (# 15730)
Ben H. Bodzy (# 23517)
Bradley M. Bakker (# 28380)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 744-5640

Counsel for Plaintiff